# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 16-538

ALVIN BARTLEY

VERSUS

SCHLUMBERGER TECHNOLOGY COMPANY
AND TRAVELERS INSURANCE COMPANY

************

**APPEAL FROM THE**
**OFFICE OF WORKERS' COMPENSATION, DISTRICT 4**
**PARISH OF LAFAYETTE, NO. 15-03769**
**ADAM JOHNSON, WORKERS' COMPENSATION JUDGE**

************

**JAMES T. GENOVESE**
**JUDGE**

************

Court composed of Marc T. Amy, Elizabeth A. Pickett, and James T. Genovese, Judges.

**AFFIRMED AND RENDERED.**

Christopher R. Philipp
Law Office of Christopher R. Philipp
117 Caillouet Place
Post Office Box 2369
Lafayette, Louisiana 70502
(337) 235-9478
COUNSEL FOR PLAINTIFF/APPELLEE:
    Alvin Bartley

**Tobin J. Eason**
**Weiss & Eason, L.L.P.**
**Post Office Box 8597**
**Mandeville, Louisiana 70470**
**(985) 626-5358**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Schlumberger Technology Corporation and**
    **Travelers Property Casualty Company of America**

**GENOVESE, Judge.**

In this workers' compensation case, Defendants, M-I LLC d/b/a M-I SWACO, a Division of Schlumberger Technology Corporation, and its workers' compensation insurer, Travelers Property Casualty Company of America (Travelers) (collectively Schlumberger),[1] appeal the judgment of the Office of Workers' Compensation in favor of Claimant, Alvin Bartley. Mr. Bartley has answered the appeal. For the following reasons, we affirm and render.

## FACTS AND PROCEDURAL HISTORY

Mr. Bartley was employed as a tool technician at Schlumberger when he allegedly sustained injury during the course and scope of his employment on March 23, 2015. The alleged accident causing injury was unwitnessed, and Mr. Bartley never returned to work for Schlumberger after that date.

On the evening of March 23, 2015, Mr. Bartley presented to Lafayette General Hospital (Lafayette General) emergency room with complaints of pain. He also sent a text message to his supervisor, Kevin Bonin, advising that he was at the hospital due to a pulled muscle in his shoulder.

On March 25, 2015, at Mr. Bonin's request, Mr. Bartley went to Schlumberger's office and filled out the necessary paperwork to document a work-related accident. Mr. Bartley provided a statement to Gerald Landry while at Schlumberger.[2]

---

[1]The caption of these proceedings is reflective of the names of the parties as they are named on the Disputed Claim for Compensation instituting this litigation. Defendants answered and formally appeared as M-I LLC d/b/a M-I SWACO, a Division of Schlumberger Technology Corporation and Travelers Property Casualty Company of America.

[2]The record reflects that Mr. Landry is an investigator with American Claims Service, Inc.

Schlumberger sent Mr. Bartley to be seen by Dr. Gordon Gidman, an orthopedist, on March 25, 2015. After viewing an x-ray and MRI report, on March 26, 2015, Dr. Gidman immediately referred Mr. Bartley to a neurosurgeon, Dr. Thomas Bertuccini, for evaluation. Mr. Bartley was seen by Dr. Bertuccini on March 26, 2015, and Dr. Bertuccini recommended surgery. Schlumberger paid for these medical examinations and the tests performed in connection with the medical treatment.

On March 27, 2015, Mr. Bartley gave a second statement explaining how the accident happened. This statement was given to Christopher Smith, an adjuster with Travelers.

On April 6, 2015, Schlumberger denied Mr. Bartley's claim based upon the medical records it had received from Lafayette General. These records documented a history of Mr. Bartley denying the occurrence of trauma and that his pain had been intermittent for over a month. Based upon the contents of the Lafayette General records, Schlumberger did not approve Dr. Bertuccinni's surgical request and denied Mr. Bartley workers' compensation benefits. Mr. Bartley then filed a Disputed Claim for Compensation with the Office of Workers' Compensation.

Following a trial on the merits, the workers' compensation judge (WCJ) found that Mr. Bartley met his burden of proving that he sustained an accident during the course and scope of his employment with Schlumberger and that he was entitled to workers' compensation benefits. Additionally, the WCJ ruled that Schlumberger failed to reasonably controvert Mr. Bartley's claim, thereby entitling him to an award of penalties and attorney fees. A formal judgment was signed on

March 15, 2016. Schlumberger has appealed said judgment, and Mr. Bartley has filed an answer to appeal.

## ASSIGNMENTS OF ERROR

On appeal, Schlumberger argues that the WCJ erred in finding that Mr. Bartley "carried his burden of proof proving the course and scope accident and the causal relationship between [his] medical condition to the alleged course and scope accident." Additionally, Schlumberger contends that the WCJ was manifestly erroneous in finding that Schlumberger "did not reasonably controvert the claim" and in awarding penalties and attorney fees. Also before this court is Mr. Bartley's answer to appeal wherein he seeks an award of additional attorney fees for work necessitated by Schlumberger's appeal.

## LAW AND DISCUSSION

As in all workers' compensation cases, Mr. Bartley had the burden of proving the occurrence of a work-related accident by a preponderance of the evidence. *Sorile v. Lott Oil Co., Inc.*, 14-1156 (La.App. 3 Cir. 3/4/15), 160 So.3d 178. With respect to an unwitnessed accident, the manner in which this burden can be met is clearly established in the jurisprudence.

> An employee can prove an unwitnessed accident with her testimony alone if "(1) no other evidence discredits or casts serious doubt upon [her] version of the accident; and (2)[her] testimony is corroborated by the circumstances following the alleged incident." *Marange*[ *v. Custom Metal Fabricators, Inc.*, 11-2678, p. 6 (La. 7/2/12), 93 So.3d 1253, 1257]. The employee's testimony may be corroborated by the testimony of coworkers, spouses, or friends, or by medical evidence. *Ardoin v. Firestone Polymers, L.L.C.*, 10-245 (La. 1/19/11), 56 So.3d 215 (citing *Bruno v. Harbert Int'l, Inc.*, 593 So.2d 357 (La.1992)). The WCJ's determinations that an employee is credible and that she satisfied her burden of proof are factual determinations that should not be disturbed by a reviewing court unless the determinations are "clearly wrong . . . absent a showing of manifest error." *Bruno*, 593 So.2d at 361.

3

*Franklin v. Calcasieu Parish Sch. Bd.*, 12-1032, p. 2 (La.App. 3 Cir. 2/6/13), 108 So.3d 907, 909.

In the instant matter, the WCJ stated in his oral reasons that he made "a specific finding that Mr. Bartley's testimony was sincere and credible." In such instance, this court has opined:

> An appellate court cannot reverse a WCJ's factual findings that are based on a reasonable credibility evaluation if the record "furnishes [a] reasonable factual basis for the trial court's finding." *Marange*, 93 So.3d at 1258 (quoting *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973)). When, as here, "there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable." *Id.*

*Id.*

In this case, Schlumberger initially paid for Mr. Bartley's medical treatment. It later denied his claim when it received the Lafayette General medical records given the history recorded in those records. Schlumberger relies on those medical records and the time sheet introduced into evidence to show a contradiction with Mr. Bartley's version of the accident. Following a trial on the merits, the WCJ concluded that Mr. Bartley had met his burden of proving a compensable work-related accident.

According to Mr. Bartley, the subject accident occurred on March 23, 2015, between 10:00 a.m. and 11:00 a.m. Mr. Bartley and one other employee[3] were working in one part of the Schlumberger facility while the other employees were performing inventory in a different area of the facility. Mr. Bartley was operating an overhead crane moving a magnetic tool. When the magnetic tool attached to another tool, he attempted to pry the tools apart. In doing so, he claims he injured

---

[3]This employee is referred to only as "Ethan."

4

his neck. Initially, Mr. Bartley thought he had pulled a muscle, and he testified that he did not immediately report an accident because he thought it wasn't anything significant. After this incident happened, Mr. Bartley took Ibuprofen and later went home for lunch and to rest. He returned to work intending to do paperwork for the remainder of the day.

Schlumberger relies upon time sheets introduced into evidence to dispute Mr. Bartley's claim that he sustained an accident between 10:00 a.m. and 11:00 a.m. Specifically, Schlumberger argues that the time sheet shows that Mr. Bartley arrived at work at 7:30 a.m., left the shop at 8:30 a.m., returned to the shop at 1:30 p.m., and then clocked out for the day at 5:00 p.m.

Mr. Bartley testified that the time sheet generated by Schlumberger is inaccurate and, further, that he does not know how Schlumberger got those hours because he did not turn in a handwritten time sheet for that pay period since he never returned to work after March 23, 2015.

Mr. Bartley testified that on the day of his accident, the time clock was inoperable. When the time clock was not working, the employees were to prepare a handwritten time sheet. Schlumberger's Operations Clerk, whose job duties include entering the employees' time (from either the time clock punch card or the employees' handwritten time sheet), confirmed that the time clock was inoperable in March 2015. Thus, Mr. Bartley's time for the day in question would have been documented by a handwritten time sheet for that day. That handwritten time sheet would have been turned in to Schlumberger at the end of the work week. According to protocol, the Operations Clerk would then input the employees' time, and a computer-generated time sheet would then be produced. It is this computer-generated time sheet that was introduced into evidence.

5

Mr. Bartley maintains that the time sheet does not accurately reflect the hours that he worked on March 23, 2015. Undisputedly, Mr. Bartley never did return to work after the day of his accident. Thus, according to his testimony, Mr. Bartley never did turn in a handwritten time sheet to be used for the subsequent input of his time and production of the computer-generated time sheet. The Operations Clerk admitted that she did not have Mr. Bartley's handwritten time sheet for comparison and testified that they are maintained for two weeks before they are shredded.

Although it was impossible for the WCJ to compare a handwritten time sheet with the time sheet introduced at trial, Mr. Bartley was adamant that he did not work for one hour on March 23, 2015, and clock out at 8:30 a.m. Additionally, the testimony of his co-employees fails to refute his presence at Schlumberger between 10:00 a.m. and 11:00 a.m. Mr. Bartley and Ethan were the only two employees performing work in this area of the shop at that time. The other employees were performing other duties relative to inventory in different locations. The testimony established that other employees saw Mr. Bartley during the course of that day, but their testimony neither proves nor disproves his presence between 10:00 a.m. and 11:00 a.m. For these reasons, we find that neither the witnesses' testimony nor the time sheet introduced into evidence cast serious doubt or negate Mr. Bartley's version of the accident.

Schlumberger contends that the medical records of Lafayette General also cast serious doubt on Mr. Bartley's account of the accident. Schlumberger argues those records indicate that in relating a history to the hospital staff, Mr. Bartley denied that he experienced a trauma, and he indicated that his pain had been intermittent in nature for over eight weeks. On the other hand, Mr. Bartley

6

characterizes the records from Lafayette General as containing a "blatantly obvious error in the electronic medical records[.]"

Mr. Bartley maintains that he related a history to the emergency room nurse that he had pain for eight hours, not eight weeks as was erroneously documented. Mr. Bartley testified he told the nurse that he felt neck pain while at work. He argues that consistent with an accident occurring earlier that day, he also sent a text message to his supervisor, Mr. Bonin, while he was at the hospital to let Mr. Bonin know that he was at the hospital for treatment. Mr. Bartley and Mr. Bonin exchanged more text messages the following day, and, on March 25, 2015, Mr. Bartley went into the office, as requested by Mr. Bonin, to fill out the appropriate paperwork to document his work-related accident.

Mr. Bartley notes that on March 25, 2015, he "gave a detailed recorded statement to American Claims Service, Inc. (ACSI) investigator, Gerald Landry." According to Mr. Bartley, he gave the same history to Mr. Landry twenty-four hours post accident as he had given to the emergency room nurse. Mr. Bartley also notes that he provided a second statement on March 27, 2015, to the adjuster for Travelers, Christopher Smith, which related a consistent history. According to Mr. Bartley, this was the same consistent history he also gave to Dr. Gidman on March 25, 2015, and to Dr. Bertuccini on March 26, 2015. Therefore, Mr. Bartley concludes that the Lafayette General medical records are simply incorrect, and he points to the above information which he contends corroborates his account of how the accident happened.

We have reviewed the evidence that was introduced and find that the Lafayette General records do indeed contradict Mr. Bartley's version of how the accident occurred; however, the two statements given by Mr. Bartley and the

medical records from Dr. Gidman and Dr. Bertuccini are consistent and do corroborate Mr. Bartley's testimony. In short, the evidence does not cast serious doubt or negate Mr. Bartley's version of how the accident happened on March 23, 2015. There are two permissive views of the evidence in this case; as such, the WCJ's choice between them cannot be manifestly erroneous or clearly wrong. *Weaver v. La. Wholesale Drug Co.*, 15-747 (La.App. 3 Cir. 3/2/16), 186 So.3d 366, *writ denied*, 16-631 (La. 5/20/16), 191 So.3d 1071. The WCJ made a specific finding of fact that Mr. Bartley's testimony was "sincere and credible." Considering the WCJ's factual findings were based on a reasonable credibility evaluation, we are not permitted to reverse same. *Franklin*, 108 So.3d 907. Clearly, there is a reasonable factual basis in the record in support of the findings of the WCJ, and we conclude that the WCJ did not manifestly err.

Mr. Bartley also bore the burden of proving a causal connection between the work-related accident and the resultant injury. *Broadway v. Shane Mitchell Logging, Inc.*, 12-810 (La.App. 3 Cir. 12/12/12), 105 So.3d 1041. Schlumberger argues on appeal that Mr. Bartley failed to meet his burden of proving "that he sustained an injury causally related to his employment postion[.]" Although the WCJ did not make an express finding on the element of causation, implicit in the judgment awarding workers' compensation benefits is a determination by the WCJ that Mr. Bartley's injuries were causally related to his March 23, 2015 accident.

Mr. Bartley maintains that while performing work at Schlumberger, he injured his neck. The only evidence contradicting his claims are the medical records from Lafayette General discussed above. Schlumberger also argues that the medical records of Dr. Gidman and Dr. Bertucinni reflect a degenerative condition. However, an aggravation of a pre-existing condition is compensable.

8

*Turner v. Lexington House*, 14-1264 (La.App. 3 Cir. 4/15/15), 176 So.3d 1071, *writ denied*, 15-952 (La. 8/28/15), 176 So.3d 405. In this case, based upon the record, we find Mr. Bartley satisfied his burden of proving that his injury was causally related to the work-related accident of March 23, 2015.

On the issue of penalties and attorney fees, Schlumberger argues that it "was more than reasonable after receiving the medical records wherein the employee denied any accident" to deny Mr. Bartley's claim. We disagree.

> Louisiana Revised Statutes 23:1201 governs the award of penalties and attorney fees in workers' compensation cases. The failure to authorize necessary medical treatment is considered a failure to furnish medical benefits, as required by La.R.S. 23:1203, and will subject the employer to penalties and attorney fees pursuant to La.R.S. 23:1201(F). However, penalties and attorney fees "shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control." La.R.S. 23:1201(F)(2).

*Prince v. Superior Energy Servs., L.L.C.*, 15-728, pp. 10-11 (La.App. 3 Cir. 12/16/15), 181 So.3d 961, 968, *writ denied*, 16-111 (La. 3/4/16), 188 So.3d 1063 (footnote omitted). A WCJ's finding that the action of an employer warrants the imposition of a penalty is a factual finding which is reviewed by an appellate court for manifest error. *Johnson v. Great West Cas. Co.*, 15-981 (La.App. 3 Cir. 3/16/16), 186 So.3d 1276, *writ denied*, 16-703 (La. 6/3/16), 192 So.3d 753.

In the instant matter, the WCJ's oral reasons reflect that the basis for the imposition of penalties was Schlumberger's denial of benefits after having obtained Mr. Bartley's medical records from Lafayette General "without any further investigation[.]" We agree with the WCJ.

"'To avoid penalties and attorney[']s fees for the nonpayment of benefits, the employer or insurer is under a continuing duty to investigate, to assemble, and to assess factual information before denying benefits.'" *Ardoin v. Calcasieu*

*Parish Sch. Bd.*, 15-814, p. 4 (La.App. 3 Cir. 2/3/16), 184 So.3d 896, 900, *writ denied*, 16-641 (La. 5/27/16), 192 So.3d 738 (quoting *George v. Guillory*, 00-591, p. 13 (La.App. 3 Cir. 11/2/00), 776 So.2d 1200, 1209, *overruled on other grounds*, *Smith v. Quarles Co.*, 04-179 (La.10/29/04), 885 So.2d 562). Although the medical records from Lafayette General understandably raised questions about Mr. Bartley's claim, at that point, Schlumberger had paid Mr. Bartley's medical expenses and had additional information corroborating the occurrence of the accident which, at the very least, warranted further investigation, which Schlumberger failed to conduct.

Mr. Bartley had provided two consistent statements relating the manner in which he was injured. Additionally, the medical records from Dr. Gidman and Dr. Bertuccini contained the same history. Thus, we find no manifest error in the WCJ's determination that based upon the evidence, Schlumberger did not reasonably controvert Mr. Bartley's claim when it failed "to investigate, to assemble, and to assess factual information before [discontinuing] benefits." *Id.*

Finally, in his answer to appeal, Mr. Bartley seeks an award of additional attorney fees for the work necessitated by the present appeal. "'An increase in attorney's fees is awarded on appeal when the defendant appeals, obtains no relief, and the appeal has necessitated more work on the part of the plaintiff's attorney, provided that the plaintiff requests such an increase.'" *Turner*, 176 So.3d at 1087 (quoting *McKelvey v. City of Dequincy*, 07-604, pp. 11-12 (La.App. 3 Cir. 11/14/07), 970 So.2d 682, 690). In the case at bar, considering our ruling herein in favor of Mr. Bartley, we find that attorney fees in the amount of $3,000.00 are warranted for the work done on the appeal of this case.

## DECREE

For the reasons set forth above, the judgment of the Office of Workers' Compensation in favor of Alvin Bartley is affirmed. Additionally, we render judgment herein in favor of Alvin Bartley against M-I LLC d/b/a M-I SWACO, a Division of Schlumberger Technology Corporation, and Travelers Property Casualty Company of America in the amount of $3,000.00 for the work done on appeal. Costs of this appeal are assessed to M-I LLC d/b/a M-I SWACO, a Division of Schlumberger Technology Corporation, and Travelers Property Casualty Company of America.

**AFFIRMED AND RENDERED.**